**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1080
_____

ANTHONY LANG, SR.; AHKEEM BROWN, individually and on behalf of all others
similarly situated,
Appellants

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, a/k/a PHEAA,
a/k/a American Education Services, a/k/a AES, a/k/a FedLoan Servicing; JAMES L.
PRESTON, both as President and Chief Executive Officer of PHEAA and individually;
STEPHANIE FOLTZ, individually; TODD MOSKO, individually; MATTHEW SESSA,
individually; DOES #1 THROUGH #10, individually
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 1-12-cv-01247)
District Judge: Hon. John E. Jones, III
_____

Submitted Under Third Circuit LAR 34.1(a)
April 16, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: April 21, 2015)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

Anthony Lang, Sr. and Ahkeem Brown sued the Pennsylvania Higher Education

Assistance Agency ("PHEAA") and several of its employees, alleging that they failed to

pay them for time worked. The District Court dismissed the action pursuant to Fed. R.

Civ. P. 12(b)(6), holding that PHEAA and one of the individual defendants in his official

capacity were immune from suit under the Eleventh Amendment, and that all individual

defendants were entitled to qualified immunity. Because we find these issues more

properly resolved after further factual development, we will vacate and remand for

further proceedings.

I

PHEAA is a servicer of student loans organized under Pennsylvania law and

headquartered in Harrisburg. Lang and Brown worked at its customer service call centers

and allege that PHEAA unlawfully failed to compensate its call center employees for the

time spent before their shifts "log[ging] into various computer applications to be ready to

begin handling calls at the beginning of their paid shift," in violation of the Fair Labor

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. App. 50.[1] Their complaint named the following defendants: PHEAA; James L. Preston, PHEAA's President and CEO, in his official and individual capacities; Stephanie Foltz, PHEAA's Vice President of Loan Operations, in her individual capacity; Todd Mosko, PHEAA's Vice President of Loan Assets Management, in his individual capacity; and Matthew Sessa, PHEAA's Vice President of FedLoan Servicing, in his individual capacity (collectively, "Defendants").

The District Court dismissed the pertinent aspects of the complaint pursuant to Fed. R. Civ. P. 12(b)(6).[2] First, applying the three factors set forth in Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989), the District Court concluded that PHEAA and Preston in his official capacity were immune from suit under the Eleventh Amendment, reasoning that, while "a judgment against PHEAA is legally distinguishable from a judgment against the Commonwealth," App. 14, Pennsylvania law considers PHEAA an arm of the state.

Second, the District Court held that the claims against the individual Defendants in their individual capacities were barred by qualified immunity, holding that they were government officials and that, "[i]n light of the considerable dispute surrounding the applicability of the FLSA to preparatory activities and the lack of any express statute or precedential ruling on the particular issue . . . , we cannot conclude that all reasonable

---

[1] The original complaint included state law claims under Pennsylvania's Wage Payment and Collection Law and its Minimum Wage Act. Those claims were dismissed in a separate order that was not appealed.

[2] Plaintiffs dismissed the remainder of the complaint, which embodied a request for prospective declaratory relief against Preston in his official capacity.

officials should have understood PHEAA's policy to be in violation of the FLSA."  App.

30.  Plaintiffs appeal.[3]

## II

## A

We first address whether PHEAA and Preston in his official capacity are entitled

to Eleventh Amendment immunity.  The Eleventh Amendment "immunize[s] an

unconsenting state from suits brought in federal courts by her own citizens as well as by

citizens of another state."  Fitchik, 873 F.2d at 658 (internal quotation marks omitted).  A

suit brought against an entity that is in essence "an arm of the state" is similarly barred by

the Eleventh Amendment.  Id.  To determine whether such an entity is entitled to

Eleventh Amendment immunity, we consider: "(1) [w]hether the money that would pay

the judgment would come from the state," which entails consideration of "whether

payment will come from the state's treasury, whether the agency has the money to satisfy

the judgment, and whether the sovereign has immunized itself from responsibility for the

agency's debts";[4] "(2) [t]he status of the agency under state law," including "how state

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  We review the District Court's dismissal of the complaint de novo and "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."  Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).  We may also consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

[4] The focus of this first factor is "the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in

4

law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation"; and "(3) [w]hat degree of autonomy the agency has." Id. at 659. Applying these factors requires "a fact-intensive review that calls for individualized determinations." Bowers v. NCAA, 475 F.3d 524, 546 (3d Cir. 2007). We treat Eleventh Amendment immunity as an affirmative defense, and "the party asserting [it] bears the burden of proving entitlement to it." Christy v. Pa. Turnpike Comm'n, 54 F.3d 1140, 1144 (3d Cir. 1995).

Presented with little beyond the allegations in the complaint (which we assume to be true at this stage) and several Pennsylvania statutes, we cannot conclude that the Fitchik factors necessarily cloak PHEAA with Eleventh Amendment immunity. As to the first factor, the complaint asserts that PHEAA would be responsible for paying a judgment against it and that this burden would not fall directly on the state. The complaint's allegation that Pennsylvania does not expend tax dollars "to support PHEAA's lending, servicing, and other proprietary activities," App. 55-56, is consistent with the statutory scheme governing PHEAA, pursuant to which "no obligation of [PHEAA] shall be a debt of [Pennsylvania] and [PHEAA] shall have no power to pledge the credit or taxing power of [Pennsylvania] nor to make its debts payable out of any moneys except those of [PHEAA]." 24 Pa. Stat. Ann. § 5104(3). Further, PHEAA's funds are kept in a segregated account under the PHEAA board's control, id. § 5105.10,

---

the first instance." Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 239-40 (3d Cir. 2005) (internal quotation marks omitted).

5

and used at its discretion to carry out its corporate purposes, id. § 5104(3); see Blake v. Kline, 612 F.2d 718, 723 (3d Cir. 1979) (noting in Eleventh Amendment context that Pennsylvania's Public School Employees' Retirement Board fund was "set apart in the state treasury from general state funds" and "administered by the State Treasurer at the direction of the Board" (footnote omitted)).[5]  Thus, viewing the allegations in the complaint as true and considering them in light of the statutory scheme governing PHEAA, we conclude that the first Fitchik factor weighs against Eleventh Amendment immunity, as it appears that PHEAA would be obligated to pay any judgment against it from its segregated funds.

As to the second factor, PHEAA has allegedly stated "that it is not considered part of the primary government of Pennsylvania," App. 61 (internal quotation marks omitted),[6] but Pennsylvania law appears to treat it as an arm of the state.  First, courts

---

[5] Citing a Pennsylvania statute providing that the State Treasurer must generally approve payment of funds from the State Treasury, the District Court reasoned that "although the Commonwealth has disclaimed legal liability for PHEAA's debts, payment of those debts will necessarily be taken from the State Treasury and require the approval of the State Treasurer."  App. 13 (citing 72 Pa. Stat. Ann. § 307).  As this Court has made clear, however, it is the legal obligation to satisfy the agency's debts that carries the most weight with respect to this first prong of the Eleventh Amendment analysis: "if a State is not under a legal obligation to satisfy a judgment, then any increase in expenditures in the face of an adverse judgment is considered a voluntary or discretionary subsidy not entitled to Eleventh Amendment protections."  Bowers, 475 F.3d at 547 (emphasis in original).  The present record provides no indication that Pennsylvania is legally obligated to satisfy a judgment against PHEAA and, for this further reason, we cannot hold that application of the first Fitchik factor favors Eleventh Amendment immunity.

[6] Although the complaint alleges that "PHEAA is not an arm of the Commonwealth of Pennsylvania," App. 55, this is a legal conclusion and is not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

have described PHEAA as "undeniably an agency of the Commonwealth." PHEAA v. Barksdale, 449 A.2d 688, 689-90 (Pa. Super. Ct. 1982). Second, PHEAA's enabling legislation describes it as "a public corporation and government instrumentality," 24 Pa. Stat. Ann. § 5101, with the public purpose of "improv[ing] the higher educational opportunities of persons who are residents of [Pennsylvania] . . . by assisting them in meeting their expenses of higher education," id. § 5102, and thereby performing "an essential governmental function," id. § 5105.6. Thus, on the limited record before us, the second Fitchik factor weighs in favor of Eleventh Amendment immunity.

The third Fitchik factor—PHEAA's autonomy—presents a close question that is difficult to resolve without the benefit of additional facts. Several allegations in the complaint are supported by statutory provisions that govern PHEAA and are suggestive of its autonomy. First, PHEAA allegedly uses no tax dollars to support its salaries or activities, and it is controlled by a relatively autonomous board of directors that has unfettered control over PHEAA funds kept in a segregated account within the state's Treasury. Id. §§ 5014(3), 5105.10. Second, PHEAA may independently enter into contracts, id. § 5104(1.1)(iii), (4); Christy, 54 F.3d at 1149 (ability to enter contracts in its own name demonstrates Pennsylvania Turnpike Commission's autonomy), sue and be sued in its own name, purchase and sell property, borrow money, earn profits from investments, and provide substantial bonuses to its executives. Third, PHEAA describes itself as more akin to a corporation than a state agency and states that it competes with loan servicing competitors nationwide. **App. 59.** These factual allegations demonstrate a

7

high degree of autonomy. Other statutory provisions, however, reveal limits on PHEAA's autonomy. PHEAA is subject to state audits and is required to report annually to the Governor and the Legislature. 24 Pa. Stat. Ann. § 5108. Further, the composition of PHEAA's board is determined by state officials: of its twenty members, one is the state Secretary of Education, three are appointed by the Governor, eight are appointed by the President pro tempore of the state Senate, and eight are appointed by the Speaker of the state House of Representatives. 71 Pa. Stat. Ann. § 111.2. State control of the composition of the board suggests PHEAA lacks autonomy and thus may be entitled to Eleventh Amendment immunity. Christy, 54 F.3d at 1149. Viewing the allegations in the complaint in the light most favorable to Plaintiffs, however, we cannot definitively conclude that the third Fitchik factor weighs in favor of Eleventh Amendment immunity.

Because the first and third factors on this record do not weigh in favor of immunity, we are unable to conclude at this stage that PHEAA has established it is entitled to Eleventh Amendment immunity. Accordingly, we will vacate the District Court's judgment and remand for further development of the factual record. Cf. U.S. ex rel. Oberg v. PHEAA, 745 F.3d 131, 140-41 (4th Cir. 2014) (vacating and remanding with respect to status of PHEAA for similar reasons); Blake, 612 F.2d at 726 (vacating and remanding on Eleventh Amendment immunity question where, "in a close case . . . , evidence beyond the mere statutory language is required").

B

We next address whether the individual Defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). The qualified immunity doctrine enables government officials "to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service." Wyatt v. Cole, 504 U.S. 158, 167-68 (1992).

In light of the uncertainty of PHEAA's status as a governmental entity under our Eleventh Amendment analysis, we are unable to conclude that the individual defendants are government employees.[7] We will therefore vacate the District Court's dismissal of Plaintiffs' claims against the individual Defendants in their individual capacities to

---

[7] Qualified immunity also may be available to private individuals under certain circumstances where they are in effect acting as government officials. See Filarsky v. Delia, 132 S. Ct. 1657, 1667-68 (2012) (extending qualified immunity under § 1983 to private investigator who "was retained by [a] [c]ity to assist in conducting an official investigation into potential wrongdoing"); see also Richardson v. McKnight, 521 U.S. 399, 413 (1997) (holding qualified immunity under § 1983 is unavailable where "a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms"); Williams v. O'Leary, 55 F.3d 320, 323 (7th Cir. 1995) (permitting private defendant to raise qualified immunity defense where he, "through his employer . . . , was under a government contract to provide [medical] services to inmates which the State was obligated to provide under the Constitution").

9

permit development of a factual record with respect to the status of PHEAA to resolve both its status as an arm of the state and whether its employees are government officials.[8] Cf. Grant v. City of Pittsburgh, 98 F.3d 116, 122-23 (3d Cir. 1996) (remanding to district court for reevaluation of qualified immunity defense).

III

For the foregoing reasons, we will vacate the judgment of the District Court and remand for further proceedings.

---

[8] We express no opinion as to whether the District Court correctly concluded entitlement to compensation for pre-shift computer login time was not clearly established and that, as a result, the individual Defendants (if found to be government employees) would be entitled to qualified immunity.

10